**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BLUEFIELD DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF WEST VIRGINIA by and through the WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION )<br><br>          Plaintiffs )<br><br>     v. )<br><br>City of Welch, McDowell County, WV; and Welch Sanitary Board )<br><br>          Defendants. ) | Civ. Action No. 1:11-cv-00647 |

**CONSENT DECREE**

# Table of Contents

I Jurisdiction and Venue                                                                  5

II Applicability and Binding Effect                                                        5

III Objectives                                                                            7

IV Definitions                                                                            7

V Submissions Requiring U.S. EPA / State Approval                                         12

VI Injunctive Relief                                                                      14

VII Control System Compliance and Post-construction Monitoring                            17

VIII Reporting Requirements                                                               18

IX Funding                                                                                21

X Civil Penalty                                                                           21

XI Stipulated Penalties                                                                   22

XII Force Majeure                                                                         26

XIII Dispute Resolution                                                                   29

XIV Effect of Settlement/Reservation of Right                                             32

XV Right of Entry                                                                         33

XVI Failure of Compliance                                                                 34

XVII Effect of Decree and Non-waiver Provisions                                           35

XVIII Costs of Suit                                                                       36

XIX Notices                                                                               37

XX Modification                                                                           38

XXI Public Participation                                                                  38

XXII Retention of Jurisdiction                                                            39

XXIII Termination                                                                         39

XXIV Effective Date                                                                       41

XXV Signatories/Service                                                                   41

XXVI Integration                                                                          41

XXVII Final Judgment                                                                      42

Appendix A  Long Term Control Plan
Appendix B  Schedule of Milestones
Appendix C  CSO Map

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF WEST VIRGINIA by and through the WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION ) ) ) ) | |
| Plaintiffs ) | Civ. Action No. 77-1163BL |
| ) | |
| v. ) | |
| ) | |
| City of Welch, McDowell County, WV; and Welch Sanitary ) Board ) | |
| ) | |
| Defendants. ) | |

**CONSENT DECREE**

WHEREAS on October 3, 1977, the United States of America, on behalf of the United States Environmental Protection Agency ("U.S. EPA" or "EPA"), filed a Civil Action against the City of Welch (the "City") and the State of West Virginia pursuant to Sections 309(b), (d), and (e) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1319(b), (d), and (e), to require the City to construct a wastewater treatment plant ("Publically Owned Treatment Works" or "POTW");

WHEREAS on November 20, 1978, the Welch Sanitary Board (the "Board") was added as a defendant and in 1984 the State of West Virginia was realigned as a party-plaintiff;

WHEREAS on February 4, 1985, the State of West Virginia, EPA, the City, and the Board (the "Parties to the Civil Action") entered into a Consent Decree to resolve the issues in the Civil Action, which included submitting and complying with a Municipal Control Plan and construction of a wastewater treatment plant that would achieve secondary treatment by August 1, 1987;

WHEREAS on March 26, 1986, the Parties to the Civil Action filed modifications of the

Consent Decree, which included the requirement to construct a wastewater collection system;

WHEREAS on June 3, 1993, the Court issued an Order requiring the City and the Board (the "Defendants") to complete construction of a wastewater treatment plant and part of a sewage collection system ("Phase I"). The Order also required the Defendants to submit a plan for completing the collection system;

WHEREAS the Defendants subsequently reported on January 27, 1999, that they had met Phase I's completion date;

WHEREAS this Court on May 3, 1999, ordered that this action remains on the Court's inactive docket;

WHEREAS the Defendants have continued to work on completing additional phases of the collection system;

WHEREAS the Parties have agreed to enter into this Consent Decree to establish an enforceable schedule for control of the combined sewer overflows and correction of the effluent limitation violations;

WHEREAS, changes in law require additional measures to be implemented at the Welch system to eliminate sewage overflows and to address the Treatment Plant's effluent limitation violations;

WHEREAS, the United States brings its claims pursuant to Section 309 of the Clean Water Act, 33 U.S.C. § 1319. In its complaint, the United States seeks the imposition of civil penalties and injunctive relief against Welch for alleged violations of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and terms and conditions of the NPDES permit issued by the West Virginia Department of Environmental Protection ("WVDEP") as WVDEP Permit No. WV0024589 in 2008;

4

AND WHEREAS, the Parties recognize, and the Court, by entering this Consent Decree, finds that this Consent Decree has been negotiated by the parties in good faith and will avoid litigation among the parties and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, and DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, and over the Parties hereto, pursuant to Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, 1355, and 1367.  Pursuant to Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b), 1391(c) and 1395(a), the proper venue for this matter is the Southern District of West Virginia.  The Complaint states claims upon which relief may be granted.  Authority for the United States to bring this action is vested in the United States Department of Justice pursuant to Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

2.      Welch waives any and all objections that it might have to the Court's jurisdiction to enter and enforce this Consent Decree and to venue in this District.

## II. APPLICABILITY AND BINDING EFFECT

3.      The provisions of this Consent Decree apply to and are binding upon the United States, on behalf of U.S. EPA, the State of West Virginia, on behalf of WVDEP, and upon Welch, its successors and assigns, its officers, directors, employees, and agents in their capacities as such, and all other persons and entities as provided for in Fed. R. Civ. P. 65(d).  In any action

5

to enforce this Decree, Welch will not raise as a defense to liability the failure of its officers, directors, agents, servants, contractors, employees or any other persons or entities provided for in Fed. R. Civ. P. 65(d) to take any actions necessary to comply with the provisions of this Consent Decree.

4.     Welch will provide a copy of this Consent Decree to all officers, agents, employees, successors and assigns whose duties might reasonably include compliance with any provision under this Consent Decree. Welch will also provide a copy of this Consent Decree, and will condition any such contract upon performance of the work in conformity with the terms of this Consent Decree, to any consultant and contractor selected or retained to perform any activity required by this Consent Decree.

5.     No later than thirty (30) days prior to transfer of any ownership interest, operation, management, or other control of the Publically Owned Treatment Works, and/or any part of the wastewater collection system, Welch will give written notice and provide a copy of this Consent Decree to any such transferee or successor in interest. Welch will require, as a condition of any such sale or transfer, that the purchaser or transferee agree in writing to be bound by this Consent Decree and submit to the jurisdiction of this Court for its enforcement. Welch will send the notification, in writing, to the contacts for U.S. EPA Region III, the United States Attorney for the Southern District of West Virginia and the United States Department of Justice, listed in Paragraph 83 of any such planned transfer at least thirty (30) days prior to the transfer. In the event of any such transfer of ownership or other interest, Welch will not be released from the obligations or liabilities of this Consent Decree unless: (i) the transferee has the financial and technical ability to assume these obligations and liabilities; (ii) the United States and the State of West Virginia have agreed to release Welch from the obligations and

liabilities; (iii) the United States, the State of West Virginia, and the transferee have jointly moved to substitute the transferee as the defendant to this Consent Decree; and (iv) the Court has approved the substitution.

### III. OBJECTIVES

6. The express purpose of the Parties entering into this Consent Decree is for Welch to take all necessary measures, consistent with the objectives of the Clean Water Act, as enunciated at Section 101 of the Act, 33 U.S.C. § 1251, and to achieve full compliance with the Act, the regulations promulgated thereunder, the State of West Virginia's water pollution control laws, and the Defendant's National Pollutant Discharge Elimination System (NPDES) permit number WV0024589, with the goal of controlling all Combined Sewer Overflows (CSOs). All plans, reports, construction, remedial maintenance, and other obligations in this Consent Decree and under any amendment to this Consent Decree will have the objective of causing Welch to come into and remain in full compliance with the CWA, all applicable Federal, state and local regulations, and the terms and conditions of Welch's NPDES permit, and to meet the objectives of U.S. EPA's April 19, 1994 "Combined Sewer Overflow (CSO) Control Policy," as these terms are defined in Paragraph 7 of this Consent Decree.

### IV. DEFINITIONS

7. Unless otherwise defined herein, terms used in this Consent Decree will have the meaning given to those terms in the Clean Water Act, 33 U.S.C. §§ 1251 et seq. and the regulations promulgated there under at 40 C.F.R. Part 122, and in Welch's NPDES permit and any successor permits. The following terms used in this Consent Decree will be defined as follows:

7

a.    "Building/Private Property Backup" shall mean a wastewater release or backup into a building or private property that is caused by blockages, flow conditions, or other malfunctions of the Collection System. A wastewater backup or release that is caused by blockages, flow conditions, or other malfunctions of a Private Lateral is not a Building/Private Property Backup.

b.    "Clean Water Act" or "CWA" shall mean the Federal Water Pollution Control Act found at 33 U.S.C. §§ 1251 et seq., and the regulations promulgated thereunder.

c.    "Collection System" shall mean the municipal wastewater collection and transmission system owned or operated by Welch including all pipes, interceptors, force mains, gravity sewer lines, lift stations, pumping stations, manholes and appurtenances thereto designed to collect and convey municipal sewage (domestic, commercial, and industrial) to Welch's WWTP or to a Combined Sewer Overflow Outfall. "Collection System" includes both the "Combined Sewer System" and the "Sanitary Sewer System."

d.    "Combined Sewer Overflow Policy" or "CSO Policy" shall mean the policy issued by U.S. EPA regarding combined sewer overflows, entitled "Combined Sewer Overflow (CSO) Policy," 59 Fed.Reg. 18,688 (April 19, 1994) and incorporated into the Clean Water Act pursuant to the Wet Weather Water Quality Act, Section 402(q) of the Clean Water Act, 33 U.S.C. § 1342(q).

e.    "Combined Sewer System" or "CSS" shall mean the portion of Welch's Collection System designed to convey municipal sewage (domestic, commercial and industrial wastewaters) and stormwater to the WWTP or to a Combined Sewer Overflow ("CSO") Outfall. It includes any future additions or modifications required by this Consent Decree.

f.    "Consent Decree" or "Decree" shall mean this Decree, all Appendices hereto, and all plans, schedules, reports, memoranda, or other submittals approved by U.S. EPA pursuant to the requirements of this Decree or any Appendix hereto. In the event of any conflict between the Decree and any Appendix, this Decree shall control.

g.    "Combined Sewer Overflow" or "CSO" shall mean any discharge from Welch's Combined Sewer System at a CSO Outfall designated in the permit consisting of Outfalls C004, C005, C006, C007, C008, C009, C010, C013, C014, C015, C017, C020, C021, C023, C024, C025, C026, or C027 as more particularly described in its NPDES permit.

8

h.   "Completion Date" shall mean the date on which Welch has completed all of the work to eliminate CSOs from its CSS.

i.   "CSO Outfall" shall mean an outfall in the Combined Sewer System from which CSOs are discharged. Welch's CSO Outfalls are identified as "overflows" in Welch's NPDES permit and are labeled as follows:

i      Behind Pendry Body Shop CSO (Outfall C004);

ii.    At Floodwall on McDowell Street CSO (Outfall C005);

iii.   Behind Flat Iron Drugstore CSO (Outfall C006);

iv.    Behind 83 Summers Street CSO (Outfall C007);

v.     Behind 149 Summers Street CSO (Outfall C008);

vi.    Clubhouse at the end of Summers Street CSO (Outfall C009);

vii.   97 Lake Drive CSO (Outfall C010);

viii.  Behind Hoppy Horne CSO (Outfall C013);

ix.    Entrance to South CSO (Outfall C014);

x.     1033 Riverside Drive CSO (Outfall C015);

xi.    Behind Armory CSO (Outfall C017);

xii.   Under Bridge Downtown CSO (Outfall C020);

xiii.  At Mikes Powerhouse CSO (Outfall C021);

xiv.   Near State Farm CSO (Outfall C023);

xv.    Across Phoenix Center CSO (outfall C024);

xvi.   Court Street Bridge CSO (Outfall C025);

xvii.  Across AEP Office CSO (Outfall C026); and

xviii. Behind Old Wolf Tire CSO (Outfall C027).

j.      "Date of Lodging" shall mean the date that this Consent Decree is lodged with the Clerk of the Court for the United States District Court for the Southern District of West Virginia.

k.      "Date of Entry" shall mean the date that this Consent Decree is entered by the Clerk of the Court for the United States District Court for the Southern District of West Virginia after being signed by a federal district judge.

l.      "Day" shall mean a calendar day unless expressly stated to be a working day. When the day a report or other deliverable is due under this Consent Decree falls on a Saturday, Sunday, federal holiday, or legal holiday for Welch, Welch shall have until the next calendar day that is not one of the aforementioned days for submission of such report or other deliverable.

m.     "Infiltration" shall mean water entering the Collection System and service connections from the ground through means that include, but are not limited to, defective pipes and sewer walls, pipe and sewer joints, connections, and manhole walls.

n.      "Inflow" shall mean water introduced into the Collection System, including service connections, from sources including, but not limited to, roof leaders, cellars, basement sump pumps, area drains in yards and driveways, foundation drains, cooling water discharges, drains from springs and other wet areas, cracked or broken manhole covers, cross connections from separate storm sewers, catch basins, storm water, surface run-off, street wash waters, and drainage.

o.      "Long Term Control Plan" or "LTCP" shall mean the sewer separation plan that Welch develops pursuant to Section F of its NPDES permit and Section VI of this Consent Decree.

p.      "Nine Minimum Controls" or "NMCs" shall mean those controls identified in Section II.B. of U.S. EPA's April 19, 1994, Combined Sewer Overflow (CSO) Control Policy.

q.      "NMC Plan" means a plan to implement the Nine Minimum Controls required by the NPDES permit.

r.      "NPDES permit" shall mean WVDEP Permit No. WV0024589 issued to the City of Welch by WVDEP, effective March 18, 2009 and any succeeding National Pollutant Discharge Elimination System permit to the City of Welch or the Welch Sanitary Board.

s.      "Paragraph" shall mean a provision of this Consent Decree identified by an Arabic number.

t.      "Parties" shall mean the United States, the State of West Virginia, and
        Welch.

u.      "Plaintiffs" shall mean the United States and the State of West Virginia.

v.      "Sanitary Sewer System" shall mean the separate portion of the Collection
        System Sewer designed to convey municipal sewage (domestic,
        commercial, and industrial wastewater) to the WWTP.

w.      "Section" shall mean a portion of this Consent Decree identified by an
        uppercase Roman number.

x.      "Semi-annual Progress Report" shall mean the reports due on a semi-
        annual basis under Section VIII of this Consent Decree.

y.      "Sensitive Areas" shall mean those areas designated by the NPDES
        authority in coordination with state and federal agencies, as appropriate,
        Outstanding National Resource Waters, National Marine Sanctuaries,
        waters with threatened or endangered species and their habitat, waters
        with primary contact recreation, public drinking water intakes or their
        designated protection areas, and shellfish beds, as set forth in Section
        II.C.3. of the CSO Policy.

z.      "Six-month Period" shall mean a six-month period ending on June 30 and
        December 31.

aa.     "Unpermitted Discharge" shall mean any discharge from the combined
        portions of Welch's Collection System at any location other than a CSO
        Outfall designated in the permit including Outfalls C004, C005, C006,
        C007, C008, C009, C010, C013, C014, C015, C017, C020, C021, C023,
        C024, C025, C026, or C027, as more particularly described in its NPDES
        permit.

bb.     "U.S. EPA" shall mean the United States Environmental Protection
        Agency and any successor departments or agencies of the United States.

cc.     "Waste Water Treatment Plant" or "WWTP" shall mean the waste water
        treatment plant owned and operated by Welch and located at Shaft Bottom
        Road, Welch, West Virginia, McDowell County.

dd.     "Welch" shall mean the defendant City of Welch, West Virginia, and the
        Welch Sanitary Board.

ee.     "WVDEP" shall mean the West Virginia Department of Environmental Protection and any successor departments or agencies of the State of West Virginia.

ff.     "Treatment Plant Plan" means a plan to comply with the effluent limitations in the NPDES permit.

### V. SUBMISSIONS REQUIRING U.S. EPA / STATE APPROVAL

8.     Approval of Deliverables:  Welch will provide WVDEP and U.S. EPA with a copy of each plan, report, schedule, or other document submitted by Welch for U.S. EPA approval.  For each plan report, schedule or other document submitted by Welch to achieve full compliance with its NPDES permit and Long Term Control Plan for U.S. EPA approval, U.S. EPA, after providing WVDEP with reasonable opportunity for consultation, may:

a.     approve the submission;

b.     approve the submission upon specified conditions;

c.     approve part of the submission and disapprove the remainder; or

d.     disapprove the submission.

9.     If the submission is approved pursuant to Paragraph 8(a), Welch will take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraphs 8(b) or (c), Welch will, upon written direction from U.S. EPA, take all actions required by the approved plan, report, or other item that U.S. EPA determines are technically severable from any disapproved portions, subject to Welch's right to dispute only the specified conditions or the disapproved portions, under Section XIII of this Consent Decree (Dispute Resolution).

10.     If the submission is disapproved in whole or in part pursuant to Paragraphs 8 (c)

or (d), Welch will, within forty-five (45) days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Welch will proceed in accordance with the preceding Paragraph.

11.     After U.S. EPA has approved the submission, Welch may seek to modify the submission. Any modification is subject to approval by the U.S. EPA. WVDEP may provide comments on the submission to the U.S. EPA on the modification request. Once U.S. EPA has approved the modified submission, Welch will implement the modified submission.

12.     Any stipulated penalties applicable to the original submission, as provided in Section XI of this Consent Decree, will accrue during the 45-day period or other specified period, but will not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Welch's obligations under this Consent Decree, the stipulated penalties applicable to the original submission will be due and payable notwithstanding any subsequent resubmission.

13.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, U.S. EPA may again require Welch to correct any deficiencies, in accordance with the preceding Paragraphs, or may themselves correct any deficiencies, subject to Welch's right to invoke Dispute Resolution and the right of U.S. EPA to seek stipulated penalties as provided in the succeeding Paragraphs.

14.     All plans, reports, and other items required to be submitted to U.S EPA and WVDEP under this Consent Decree will, upon approval or modification by U.S. EPA, be enforceable under this Consent Decree. In the event U.S. EPA approves or modifies a portion of a plan, report or other item required to be submitted to U.S. EPA and WVDEP under this

13

Consent Decree, the approved or modified portion will be enforceable under this Consent Decree.

## VI. INJUNCTIVE RELIEF

### A.    PERMANENT INJUNCTION

15.    Welch will achieve and maintain full compliance with the terms and conditions of its NPDES permit and the provisions of the Act, 33 U.S.C. §§ 1281 et seq., and West Virginia Code Chapter 22, and the rules promulgated there under and with the compliance program and the schedules set forth below.

### B.    LONG-TERM CONTROL PLAN - COMBINED SEWERS SEPARATION

16.    Welch will comply with the schedule, incorporated as part of the LTCP and described in Paragraph 17.  The Long-Term Control Plan attached as Appendix A hereto is hereby incorporated by reference as an enforceable provision of this Decree.  All work under this Consent Decree will be completed by no later than December 31, 2027.

17.    Welch will complete work on the following projects (referred to by their contract number) in accordance with the following compliance schedule.

| Contract | Impacted CSOs | CSO removal Date |
|----------|---------------|------------------|
| 7D | 10 | 12/31/12 |
| 8A and 8B | 8 and 9 | 12/31/16 |
| 8C | 13 | 12/31/18 |
| 8C | 14 | 12/31/18 |
| 8C | 15 | 12/31/18 |
| 7E | 24 | 12/31/22 |
| 5E | 5 | 12/31/24 |
| 8E | 7 | 12/31/27 |
| N/A | 2 | 12/31/27 |

18.    Within sixty (60) days of completing work on each contract listed in the previous

Paragraph and on any future contracts to eliminate CSOs or to separate combined sewers, Welch

will certify under Paragraph 2424 that they have designed, constructed and will operate such

project in accordance with the terms of this Consent Decree and the NPDES permit.

19.     Welch will submit by June 30, 2016, a report on the then current status of the

number of remaining CSOs from the CSS. The Report will describe the overflows' duration and

frequency.

### C.     ELIMINATION/REDUCTION OF INFLOW AND INFILTRATION

20.     Sixty (60) days after the lodging of this Consent Decree, Welch will submit to

EPA for approval a plan for an ongoing program to identify and eliminate sources of Inflow and

Infiltration into the Combined Sewer System with the goal of eliminating excessive Inflow and

Infiltration in accordance with 40 C.F.R. § 35.2005(b)(16). Welch's plan must evaluate the

following measures in the development of this program:  identification and elimination of roof

leaders and downspout connections leading to the Combined Sewer System; redirection of area

and foundation drains and basement sump pumps; and elimination of unauthorized and/or illegal

cross connections. Following EPA approval of the plan, after consultation with the state, Welch

will implement the plan in accordance with its provisions. Upon approval by EPA, the Inflow

and Infiltration Plan shall be incorporated by reference as an enforceable provision of this

Decree. Commencing with the first Semi-annual Progress Report date following the Date of

Entry, but no sooner than six months following the Date of Entry, Welch will describe the steps

it has taken and will take to achieve compliance with the provisions of this Paragraph.

### D.     NINE MINIMUM CONTROLS PLAN

21.     Six (6) months after the date of Entry of this Consent Decree, Welch will submit

an NMC Plan to the Plaintiffs, subject to the conditions under Section V. The Nine Minimum

Controls described in the Nine Minimum Controls Plan are set forth in Section II.B. of the CSO

Policy and include the following:

   a.   Proper operation and regular maintenance programs for sewer systems and
        CSOs;

   b.   Maximum use of collection system for storage;

   c.   Review and modification of pretreatment requirement to assure CSO
        impacts are minimized;

   d.   Maximization of flow to the POTW for treatment;

   e.   Prohibition of CSOs during dry weather;

   f.   Control of solid and floatable materials in CSOs;

   g.   Pollution prevention;

   h.   Public notification to ensure that the public receives adequate notification
        of CSO occurrences and CSO impacts;

   i.   Monitoring to effectively characterize CSO impacts and the efficacy of
        CSO controls.

Upon approval by EPA, the Nine Minimum Controls Plan shall be incorporated by reference as

an enforceable provision of this Decree and implemented.

   **E.**   **TREATMENT PLANT PLAN**

   22.   Six (6) months after the date of Entry of this Consent Decree, Welch will submit a

Treatment Plant Plan to the Plaintiffs, subject to the conditions under Section V, that contains the

following elements:

   a.   A review of effluent limitation violations;

   b.   A review and assessment of the current operation of the Treatment Plant;

   c.   An assessment of the potential for new flows (near-term and long-term);

16

d.     An assessment of the impact that Welch's work has on the Plant's operations;

e.     An analysis of the options for correcting the effluent limitations violations' cause(s), including the increased wasting of sludge;

f.     A schedule for putting into place the options that Welch selects to remedy the violations and

g.     An assessment of potential managerial and administrative changes that could improve the Treatment Plant's operations.

Upon approval by EPA, the Treatment Plant Plan shall be incorporated by reference as an enforceable provision of this Decree.

23.     Welch will operate the Treatment Plant in compliance with the NPDES permit.

## VII. CONTROL SYSTEM COMPLIANCE AND POST-CONSTRUCTION MONITORING

24.     Within 60 (sixty) days of placing into operation each project required under the LTCP and/or Section VI, Welch will certify pursuant to Paragraph 30 that the project has been designed, has been constructed, and will be operated in accordance with the terms of this Consent Decree and the NPDES permit.

25.     By December 31, 2027, Welch will submit to the Plaintiffs for review and approval a post-construction monitoring plan for the receiving waters.   Welch will commence post-construction monitoring for each receiving water pursuant to that plan during the first wet weather event that occurs after thirty (30) days from the date of placing the last construction project into operation or the date of U.S. EPA approval of the plan for that receiving water, whichever is later.   The post-construction monitoring program will satisfy the requirements of

17

the 1994 CSO Policy and demonstrate compliance with the provisions in Welch's NPDES permit pertaining to CSOs.

## VIII. REPORTING REQUIREMENTS

### A. REPORTS

26.     On a semi-annual basis on January 31 and July 31, for each Six-month Period commencing with the first full six-month period after Entry of this Consent Decree and continuing until termination, Welch will submit to U.S. EPA and the State of West Virginia a progress report ("Semi-Annual Progress Report") regarding the implementation of the requirements of this Decree in the previous Six-month Period.  The Semi-Annual Progress Report will include at a minimum:

a.     A statement setting forth the deadlines and other terms that Welch is required by this Consent Decree to meet since the date of the last Semi-annual Progress Report, whether and to what extent Welch has met these requirements, and the reasons for any noncompliance;

b.     A general description of the work completed within the Six-month Period, the status of any request for a grant or loan and a projection of work to be performed pursuant to this Consent Decree during the next or succeeding Six-month Period.  Notification to U.S. EPA and the State of West Virginia of any anticipated delay shall not, by itself, excuse the delay;

c.     A summary of all contacts with U.S. EPA and the State of West Virginia during the reporting period, including but not limited to the date deliverables under this Decree were sent to U.S. EPA and the State of West Virginia;

d.     A statement of any exceedances of NPDES permit limitations;

e.      An updated map of sewer sheds to include, but not be limited to CSOs, outfalls, connections, water bodies, and labels; and,

f.     A summary of all CSOs, SSOs and other unpermitted discharges occurring within the Six-month Period including the actual or estimated frequency, duration, and volume of each CSO, SSO, and other unpermitted discharges.

18

27.     Welch will submit the Semi-Annual Progress Reports to the individuals listed in Paragraph 83 until this Consent Decree terminates in accordance with Section XXIII (Termination).

28.     This requirement to provide status reports is in addition to any reporting requirements in the NPDES permit.   In addition, Welch will retain all documents that relate to or discuss the construction of the CSS system (or any portion thereof) operation, maintenance, or repair of the CSS and Treatment Plant, or that relate to or discuss the number, frequency, volume, quality or environmental impact of CSO or Treatment Plant discharges, and all data, documents, plans, records, and reports that relate to matters performed by Welch pursuant to this Decree for the term of this Decree.  This Paragraph does not limit or affect any duty or obligation of Welch to maintain records or information required by its NPDES permit.

29.     Welch will maintain copies of any underlying research and data in its possession, custody or control for any and all documents, reports, plans, or studies submitted to U.S. EPA or the State of West Virginia pursuant to this Consent Decree or pursuant to Welch's NPDES permit for a period of five (5) years from date of termination of this Consent Decree, unless a longer period is required by Welch's NPDES permit.  Welch will require any independent contractor implementing any portion of this Consent Decree to also retain such materials for a period of five (5) years from date of termination of this Consent Decree, unless a longer period is required by Welch's NPDES permit.  Welch will submit such supporting documents to U.S. EPA and/or West Virginia upon request.  Following the retention periods described above, Welch will provide U.S. EPA and the State of West Virginia with written notification fifteen (15) business days prior to the destruction of any documents required to be retained under this Decree.  The

19

notification will comply with the requirements of Paragraph 83.

## B.   CERTIFICATION AND ADMISSIBILITY

30.   Any report or plan relating to monitoring data or any representation made by Welch as to its compliance with this Decree that Welch is required by this Consent Decree to submit, including reports, plans or other submissions that Welch is also required to submit by its NPDES permit, will be signed by an official or authorized agent of Welch and shall include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

31.     The reporting requirements of this Consent Decree do not relieve Welch of any reporting obligations required by the Clean Water Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

32.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## IX. FUNDING

33.     Compliance with the terms of this Consent Decree by Welch is not conditioned on the receipt of federal or state grant or loan funds or upon Welch's financial capabilities.  In addition, Welch's failure to comply is not excused by the lack of federal or state grant or loan funds, or by the processing of any applications for the same, or by Welch's financial capabilities.

## X. CIVIL PENALTY

34.     Within thirty (30) days after the Effective Date of this Consent Decree, Welch will pay the sum of $5,000.00 as a civil penalty.  Fifty (50) percent of the total penalty will be paid to the United States and fifty (50) percent will be paid to the State of West Virginia.  Welch will pay the civil penalty due to the United State by FedWire Electronic Funds Transfer ("EFT") in accordance with written instructions to be provided to Welch by the U.S. Department of Justice following execution of this Consent Decree.  No later than thirty (30) days following entry of this Decree, Welch will pay a civil penalty in the amount of $2,500.00 to the State of West Virginia. Payment will be made by cashier's check or certified funds, payable to "West Virginia Department of Environmental Protection," and will be sent to:

21

Michael Zeto, Chief Inspector
West Virginia Department of Environmental Protection
Environmental Enforcement
601 57th Street SE
Charleston, WV 25304

35.     Payment may also be made by electronic funds transfer to the designated accounts

pursuant to instructions sent by the State of West Virginia upon request by Welch.  A copy of the

check and transmittal letter or other evidence of payment will also be sent to the West Virginia

Attorney General's Office and WVDEP, as provided in Section VIII, REPORTING

REQUIREMENTS.

36.     Welch will pay interest on any unpaid balance of the civil penalty owed to the

United States, which will begin to accrue at the end of the 30-day period described above, at the

rate specified in 28 U.S.C. § 1961.  Welch will pay interest on any unpaid balance of the civil

penalty owed to the State of West Virginia, which will begin to accrue at the end of the 30-day

period described above, at the rate of interest provided for pursuant to West Virginia Code § 56-

6-31.

37.     Upon entry of this Decree, this Decree will constitute an enforceable judgment for

purposes of post-judgment collection in accordance with Rule 69 of the Federal Rules of Civil

Procedure, the Federal Debt Collection Procedure Act, 28 U.S.C. § 3001-3308, and other

applicable federal authority.  The United States and the State of West Virginia will be deemed

judgment creditors for purposes of collection of any unpaid amounts of the civil and stipulated

penalties and interest.

## XI. STIPULATED PENALTIES

38.     Welch will be liable for stipulated penalties to the United States and the State of

22

West Virginia for violations of this Consent Decree as specified below, unless excused under Section XII (FORCE MAJEURE). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

39.     Interim milestones include any obligation required under Section VI (INJUNCTIVE RELIEF) and Section VII (CONTROL SYSTEM COMPLIANCE AND POST CONSTRUCTION MONITORING) of the Decree, including any milestone in any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree. For failure to comply with any interim milestone in Section VI (INJUNCTIVE RELIEF) or Section VII (CONTROL SYSTEM COMPLIANCE AND POST CONSTRUCTION MONITORING) of this Consent Decree, Welch will pay the following stipulated penalties to the Plaintiffs per violation per day:

| Period of Noncompliance | Penalty Per Day Per Violation |
| --- | --- |
| 1st to 30th Day | $ 1,000 |
| 31st to 59th Day | $ 2,000 |
| 60th day until submitted | $ 4,000 |

40.     Final milestones are the completion of the last construction project and removal of the last CSO required under Paragraph 17 and a certification that all CSO discharges have been eliminated in accordance with Paragraph 24. For failure to comply with any final milestone in Section VI (INJUNCTIVE RELIEF) or Section VII (CONTROL SYSTEM COMPLIANCE AND POST CONSTRUCTION MONITORING) of this Consent Decree, Welch will pay the

23

following stipulated penalties to the Plaintiffs per violation per day:

| Period of Noncompliance | Penalty Per Day Per Violation |
|---|---|
| 1st to 30th Day | $ 2,000 |
| 31st to 59th Day | $ 4,000 |
| 60th day until submitted | $ 8,000 |

41.    If Welch fails to comply with effluent limitations in the NPDES permit, Welch

will pay the following stipulated penalties to the Plaintiffs per violation per day:

| Period of Noncompliance | Penalty Per Day Per Violation |
|---|---|
| 1st to 30th Day | $ 2,000 |
| 31st to 59th Day | $ 4,000 |
| 60th day until submitted | $ 8,000 |

42.    If Welch fails to comply with a requirement or provision of this Consent

Decree not expressly listed above, Welch will pay the following stipulated penalties to the

Plaintiffs per violation per day:

| Period of Noncompliance | Penalty Per Day Per Violation |
|---|---|
| 1st to 30th Day | $ 1,000 |
| 31st to 59th Day | $ 2,000 |
| 60th day until submitted | $ 4,000 |

43.    Stipulated civil penalties will automatically begin to accrue on the first day Welch

fails to satisfy any obligation or requirement of this Consent Decree and will continue to accrue

each day until Welch achieves compliance with such obligation or requirement. Stipulated

penalties shall accrue simultaneously for separate violations of this Consent Decree.

44.    Stipulated civil penalties will be paid within thirty (30) days of receiving a written

demand for payment of stipulated civil penalties for any noncompliance with any of the

schedules of performance or requirements set forth in this Consent Decree.  Written demand by

24

either U.S. EPA or the State of West Virginia will constitute written demand from both agencies. Fifty (50) percent of the stipulated penalty will be paid to the United States and fifty (50) percent will be paid to the State of West Virginia.

45.     In the event that a stipulated penalty is not paid according to the instructions in a written demand from the United States, the stipulated civil penalty will be payable with interest from the original due date to the date of payment, at the statutory judgment rate set forth at 28 U.S.C. § 1961(a).

46.     Fifty (50) percent of the stipulated civil penalties will be paid electronically or by submitting a certified or cashier's check payable to "Treasurer, the United States of America," and tendered to the United States Attorney for the Southern District of West Virginia. Simultaneously, Welch will send copies of the certified or cashier's check, together with a letter describing the basis for the penalties, to the following addresses. The transmittal letter will reference the caption, the civil action number, and DOJ number 90-5-1-1-813/1:

> Chief, Environmental Enforcement Section
> United States Department of Justice
> Post Office Box 7611
> Ben Franklin Station
> Washington, D.C. 20044
>
> Branch Chief
> NPDES Enforcement Branch, 3WP42
> Water Protection Division
> U.S. EPA Region III
> 1650 Arch Street
> Philadelphia, Pa 19103
>
> Docket Clerk (3RC00)
> U.S. EPA Region III
> 1650 Arch Street
> Philadelphia, PA 19103
>
> and

25

> U. S. Environmental Protection Agency
> Cincinnati Finance Center
> 26 W. Martin Luther King Dr.
> Cincinnati, Ohio 45268
> Attn: Bryson Lehman.

Fifty (50) percent of the stipulated civil penalties will be paid to the State of West Virginia.

Payment will be made by cashier's check or certified funds, payable to "West Virginia

Department of Environmental Protection," and will be sent to:

> Michael Zeto, Chief Inspector
> West Virginia Department of Environmental Protection
> Environmental Enforcement
> 601 57th Street SE
> Charleston, WV 25304

47.     Payment of stipulated civil penalties as set forth above will be in addition to any

other rights or remedies that may be available to the Plaintiffs or their agencies by reason of

Welch's failure to comply with the requirements of this Consent Decree and all applicable

Federal, state or local laws, regulations, wastewater discharge permit(s), and all other applicable

permits. Where a violation of this Consent Decree is also a violation of such laws, regulations,

or permits, Welch will be allowed a credit, in the amount of any Stipulated Penalties paid, as a

set-off against any statutory penalties imposed for such violation.

48.     If Welch invokes this Consent Decree's Dispute Resolution provisions and the

Court resolves the dispute against Welch, stipulated penalties which have accrued during the

pendency of the dispute will be payable, as set forth herein, upon resolution of the dispute.

## XII. FORCE MAJEURE

49.     "Force Majeure" shall mean any event arising from causes beyond the control of Welch

or the control of any entity controlled by Welch, including its consultants and contractors, which

26

delays or prevents the performance of any obligation under this Consent Decree despite Welch's best efforts to fulfill the obligation. The requirement that Welch exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Welch's financial inability to perform any obligation under this Consent Decree. Unanticipated or increased costs or expenses associated with implementation of this Consent Decree and/or changed financial circumstances will not, in any event, be considered Force Majeure events. Failure to apply for a required permit or approval or to provide in a timely manner all information required to obtain a permit or approval that is necessary to meet the requirements of this Consent Decree, or failure of Welch to approve contracts, will not, in any event, be considered Force Majeure events.

50. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Welch will provide notice orally or by electronic or facsimile transmission to Michael Zeto at (304) 926-0470, michael.a.zeto@wv.gov, facsimile (304) 926-0488 and Jennifer Hughes at (304) 926-0460, Jennifer.L.Hughes@wv.gov, facsimile (304) 926-0461, of the West Virginia Department of Environmental Protection, within 72 hours of when Welch first knew that the event might cause a delay. Within seven (7) days thereafter, Welch will provide in writing to EPA and the State of West Virginia an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Welch's rationale for attributing such delay to a Force Majeure event if it

27

intends to assert such a claim; and a statement as to whether, in the opinion of Welch, such event may cause or contribute to an endangerment to public health, welfare or the environment. Welch will include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure event. Failure to comply with the above requirements will preclude Welch from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Welch will be deemed to know of any circumstance of which Welch, any entity controlled by Welch, or Welch's agents, consultants or contractors knew or should have known.

51.     If EPA, after a reasonable opportunity for review and comment by the State of West Virginia, agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State of West Virginia, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Welch in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

52.     If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Welch in writing of its decision.

53.     If Welch elects to invoke the dispute resolution procedures set forth in Section XIII (Dispute Resolution), it shall do so no later than fifteen (15) days after receipt of EPA's notice. In any such proceeding, Welch will have the burden of demonstrating by a

preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 49 and 50, above. If Welch carries this burden, the delay at issue shall be deemed not to be a violation by Welch of the affected obligation of this Consent Decree identified to EPA and the Court.

54.     Nothing in this Section relieves Welch of its duty to use due diligence to timely complete the requirements of this Consent Decree or of Welch's obligation to meet all discharge limitations and other obligations contained in Welch's NPDES permit.

55.     Compliance with a requirement of this Consent Decree will not by itself constitute compliance with any other requirement.  An extension of one compliance date based on a particular event will not automatically extend another compliance date or dates.  Welch will make an individual showing of proof regarding the cause of each delayed incremental step or other requirement for which an extension is sought.  Welch may petition for the extension of more than one compliance date in a single request.

## XIII. DISPUTE RESOLUTION

56.     This Court will retain jurisdiction for the purpose of adjudicating, in the manner provided by this Section, all disputes between Welch and the Plaintiffs that may arise under the provisions of this Consent Decree, exclusive of modifications pursuant to Paragraph 84.  Unless otherwise expressly provided in this Consent Decree, the dispute resolution procedures of this Section will be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section will not apply to actions by the Plaintiffs to enforce obligations of Welch that have not been disputed in accordance with this

Section. Welch's failure to seek resolution of a dispute under this Section shall preclude Welch from raising any such issue as a defense to an action by the United States to enforce any obligation of Welch arising under this Decree.

57. Permit actions pursuant to the laws of the State of West Virginia, including permit issuance, denials, and modifications, will not be subject to this Consent Decree, but rather will continue to be handled through the State of West Virginia's administrative and judicial procedures.

58. Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree will first be the subject of informal negotiations. The dispute will be considered to have arisen when Welch sends the United States and the State of West Virginia a written Notice of Dispute. Such Notice of Dispute will state clearly the matter in dispute. The period of informal negotiations will not exceed twenty (20) days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States will be considered binding unless, within twenty (20) days after the conclusion of the informal negotiation period, Welch invokes formal dispute resolution procedures as set forth below.

59. Formal Dispute Resolution. Welch may invoke formal dispute resolution procedures, within the time period provided in the preceding paragraph, by serving on the United States and the State of West Virginia a written Statement of Position regarding the matter in dispute. The Statement of Position will include, but need not be limited to, any factual data, analysis, or opinion supporting Welch's position and any supporting documentation relied upon by Welch.

60. The United States and the State of West Virginia will endeavor to serve their

30

collective or individual Statement of Position within forty-five (45) days of receipt of Welch's Statement of Position. The United States and the State of West Virginia's Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States and State of West Virginia. The United States and the State of West Virginia's Statement of Position will be binding on Welch, unless Welch files a motion for judicial review of the dispute in accordance with the following paragraph.

61.     Welch may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIX of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within ten (10) days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Welch's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

62.     The United States shall respond to Welch's motion within the time period allowed by the Local Rules of this Court. Welch may file a reply memorandum, to the extent permitted by the Local Rules.

63.     Standard of Review

a.     Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 59 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the

31

performance of work undertaken pursuant to the Consent Decree; and all other disputes that are accorded on the administrative record under applicable principles of administrative law, Welch will have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with the law.

           b.    Other Disputes.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 59, Welch will have bear the burden of demonstrating that its position complies with this Consent Decree and better further the objectives of the Consent Decree.

        64.    The invocation of dispute resolution procedures under this Section will not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter will continue to accrue from the first Day of noncompliance, but payment will be stayed pending resolution of the dispute as provided in this Section.  If Welch does not prevail on the disputed issue, stipulated penalties will be assessed and paid as provided in Section XI (Stipulated Penalties).

## XIV. EFFECT OF SETTLEMENT/RESERVATION OF RIGHT

        65.    This Consent Decree resolves the civil claims of the United States and the State of West Virginia for the violations alleged in the Complaint filed in this action through the date of lodging.

        66.    The United States and the State of West Virginia reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in the preceding Paragraph.  This Consent Decree shall not be construed to limit the rights of the United States or the State of West Virginia to obtain penalties or injunctive relief under the Clean

Water Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions. Nothing in this Consent Decree shall be construed to limit the authority of the United States and the State of West Virginia to undertake any action against any person, including Welch, in response to conditions that may present an imminent and substantial endangerment to the environment or the public health or welfare.

67.    In any subsequent administrative or judicial proceeding initiated by the United States or West Virginia for injunctive relief, civil penalties, other appropriate relief relating to Welch's violations, Welch will not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State of West Virginia in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 65 of this Section.

68.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Welch is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Welch's compliance with this Consent Decree will be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.

69.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XV. RIGHT OF ENTRY

70.    Commencing upon the date of lodging of this Consent Decree, the Plaintiffs and their representatives, contractors, consultants, and attorneys will have the right of entry into and

33

upon the premises of Welch at all reasonable times, upon proper presentation of credentials, for the purposes of:

    (A)    Monitoring the progress of activities required by this Consent Decree;

    (B)    Verifying any data or information required to be submitted pursuant to this Consent Decree;

    (C)    Obtaining samples and, upon request, splits of any samples taken by Welch or its consultants. Upon request, Welch will be provided with splits of all samples taken by the Plaintiffs;

    (D)    Inspecting and evaluating the CSO System;

    (E)    Inspecting and reviewing any record required to be kept under the provisions of this Consent Decree or any NPDES permit and the Clean Water Act; and

    (F)    Otherwise assessing Welch's compliance with this Consent Decree.

71.    This Section XV (RIGHT OF ENTRY), in no way limits or affects any right of entry and inspection, or any other right otherwise held by the United States, the State of West Virginia, U.S. EPA, WVDEP, and any other governmental entity, pursuant to applicable federal or state laws, or regulations.

## XVI. FAILURE OF COMPLIANCE

72.    The United States and the State of West Virginia do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Welch's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 33 U.S.C. §§ 1251 et seq., or with any other provisions of federal, State, or local laws, regulations, or permits. Notwithstanding the Plaintiffs' review or approval of any Report, Plan, or other submissions,

pursuant to this Consent Decree, Welch will remain solely responsible for any noncompliance with the terms of this Consent Decree, all applicable permits, the Clean Water Act, and regulations promulgated there under. The pendency or outcome of any proceeding concerning issuance, reissuance, or modification of any permit will neither affect nor postpone Welch's duties and obligations as set forth in this Consent Decree.

73.     Welch's failure to control CSOs in the collection system in a manner consistent with the approved LTCP and this Consent Decree will be a violation of this Consent Decree.

### XVII.  EFFECT OF DECREE AND NON-WAIVER PROVISIONS

74.     The Consent Decree in no way affects or relieves Welch of any responsibility to comply with any federal, state, or local law or regulation.

75.     The Parties agree that Welch is responsible for achieving and maintaining complete compliance with all applicable federal and state laws, regulations, and permits, and that compliance with this Consent Decree will be no defense to any actions commenced pursuant to said laws, regulations, or permits.

76.     The Plaintiffs reserve the right to file a civil action for statutory penalties or injunctive relief against Welch for any violations of the Clean Water Act by Welch that occur prior to or after the date of lodging of this Consent Decree for which a release has not been granted by Paragraph 655. This Consent Decree does not limit or affect the rights of Welch or the Plaintiffs against any third parties that are not parties to this Consent Decree.

77.     This Consent Decree will not limit any authority of the Plaintiffs under any applicable statute, including the authority to seek information from Welch or to seek access to the property of Welch.

78.     Obligations of Welch under the provisions of this Consent Decree to perform

duties scheduled to occur after the date of lodging, but prior to the date of entry, will be legally enforceable from the date of lodging of this Consent Decree. Liability for stipulated penalties, if applicable, will accrue for violation of such obligations as of the date of violation and payment of such stipulated penalties may be demanded by the Plaintiffs upon or after entry of this Consent Decree.

79.     The Plaintiffs reserve the right to file a criminal action for statutory penalties or other criminal relief against Welch for any violations by Welch of the Clean Water Act or other applicable federal statutes.

80.     It is the intent of the Parties hereto that the clauses hereof are severable, and should any clause(s) be declared by a court of competent jurisdiction to be invalid and unenforceable, the remaining clauses will remain in full force and effect.

81.     Welch's compliance with the terms of this Consent Decree will not constitute compliance with the Clean Water Act or any other Federal, State or local law or regulation. This Consent Decree does not constitute a waiver, suspension, or modification of the terms or conditions of any issued permit, the CWA, or the regulations promulgated there under. As required by this Consent Decree, Welch will continue to operate the Treatment Plant in compliance with the NPDES permit.

## XVIII. COSTS OF SUIT

82.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State of West Virginia shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Welch.

36

## XIX. NOTICES

83.     Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

To the United States Department of Justice:


Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7611, Ben Franklin Station
Washington, D.C. 20044
Reference DOJ Case No. 90-5-1-1-813/1

United States Attorney
Southern District of West Virginia
Post Office Box 1713
Charleston, WV 25326

To U.S. EPA:

Branch Chief
NPDES Enforcement Branch (3WP42)
Water Protection Division
U.S. Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA 19103

Philip Yeany (3RC50)
Office of Regional Counsel
U.S. Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA 19103

To the State of West Virginia:

Michael Zeto, Chief Inspector
West Virginia Department of Environmental Protection
Environmental Enforcement

601 57th Street SE
Charleston, WV 25304

Jennifer Hughes
West Virginia Department of Environmental Protection
Office of Legal Services
601 57th Street SE
Charleston, WV 25304

To City of Welch and Welch Sanitary Board:

Reba J. Honaker
Mayor
City of Welch
Welch Municipal Building
88 Howard Street
Welch, WV 24801

## XX.  MODIFICATION

84.     The terms of this Consent Decree, including any attached appendices, may be
modified only by a subsequent written agreement signed by all Parties.  Where the modification
constitutes a material change to this Decree, it shall be effective only upon approval by the
Court.

85.     Any disputes concerning modification of this Decree shall be resolved pursuant to
Section XIII of this Decree (Dispute Resolution), provided, however, that, instead of the burden
of proof provided by Paragraph 63, the Party seeking modification bears the burden of
demonstrating that it is entitled to the requested modification in accordance with Federal Rule of
Civil Procedure 60(b).

## XXI.  PUBLIC PARTICIPATION

86.     This Consent Decree shall be lodged with the Court for a period of not less than
thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7 and W. Va.

Code R. § 47-10-16.2.c. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Welch consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Welch in writing that it no longer supports entry of the Decree.

87.     All information and documents submitted by Welch to U.S. EPA pursuant to this Consent Decree will be subject to public inspection, unless identified and supported as confidential by Welch in accordance with 40 C.F.R. Part 2.

## XXII. RETENTION OF JURISDICTION

88.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XIII and XX, or effectuating or enforcing compliance with the terms of this Decree.

## XXIII. TERMINATION

89.     Either the City of Welch or the Welch Sanitary Board may submit a motion to the Court requesting termination of this Consent Decree. After all of the following events have occurred, this Consent Decree may be terminated:

a.     Submit a certified statement to the Plaintiffs that, as of the Completion Date, Welch has completed all of the construction projects required under Paragraph 17. "Completed" will mean that each project is finished construction;

b.     Submit a certified statement to the Plaintiffs that Welch has completed the post-construction monitoring required in Paragraph 25;

c. Submit to the Plaintiffs the post-construction monitoring data and any other monitoring required by their NPDES permit demonstrating that they have achieved and maintained compliance with the provisions related to CSOs in their NPDES permit and the discharges from the Permittee's CSOs will not cause or contribute to an in-stream excursion above any numeric or narrative criteria developed and adopted as part of the West Virginia water quality standards for two years from the date all construction is completed;

d. Submit to the Plaintiffs a statement that Welch has complied for one (l) year with the then current NPDES permit from the date all construction is completed;

e. Submit to the Plaintiffs a statement that Welch has implemented the Nine Minimum Controls in accordance with NMC Plan and the CSO Policy for three (3) years prior to the date of the statement; and

f. Submit a certified statement that they have paid all stipulated penalties and any other monetary obligations due hereunder, and no penalties or other monetary obligations due hereunder are outstanding or owed to the Plaintiffs.

90. The Consent Decree will not terminate if, within ninety (90) days of certification by Welch to the Plaintiffs of compliance pursuant to this Section, either the United States or the State of West Virginia asserts in writing that full compliance has not been achieved. This Consent Decree will remain in effect pending resolution of the dispute by the parties or the Court.

91. The Consent Decree will not terminate if, within ninety (90) days of certification by Welch to the Plaintiffs of compliance pursuant to this Section, either the United States or the State of West Virginia seeks further specific information from Welch in order to evaluate Welch's certifications. This Consent Decree will remain in effect pending Welch supplying the

necessary information.

92.     The Consent Decree will not terminate if, within ninety (90) days of Welch

supplying the necessary information to the Plaintiffs as required by the preceding Paragraph,

either the United States or the State of West Virginia asserts in writing that full compliance has

not been achieved.  This Consent Decree will remain in effect pending resolution of the dispute

by the parties or the Court.

## XXIV. EFFECTIVE DATE

93.     The effective date of this Decree will be the date of entry by this Court.

## XXV. SIGNATORIES/SERVICE

94.     Each undersigned representative of Welch, the State of West Virginia and the

Assistant Attorney General for the Environment and Natural Resources Division of the

Department of Justice certifies that he or she is fully authorized to enter into the terms and

conditions of this Consent Decree and to execute and legally bind the Party he or she represents

to this document.

95.     This Consent Decree may be signed in counterparts, and its validity shall not be

challenged on that basis.  Welch agrees to accept service of process by mail with respect to all

matters arising under or relating to this Consent Decree and to waive the formal service

requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any

applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXVI. INTEGRATION

96.     Other than the LTCP, the NMC Plan and the Treatment Plant Plan that are

subsequently submitted and approved pursuant to this Decree, this Consent Decree constitutes

the final, complete, and exclusive agreement and understanding among the Parties with respect

to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXVII. FINAL JUDGMENT

97.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State of West Virginia, the City of Welch, and the Welch Sanitary Board.

Entered this _____ day of _____ 2011.

_____
United State District Court Judge

FOR PLAINTIFF THE UNITED STATES OF AMERICA:


_8/16/11_
Date

*Ignacia S. Moreno*

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources
Division
United States Department of Justice


_8/25/11_
Date

*Chad Carbone*

CHAD CARBONE
Special DOJ Attorney
NANCY FLICKINGER
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
United States Department of Justice
Post Office Box 7611
Ben Franklin Station
Washington, D.C. 20044
202-514-5258


43

9/21/11

Date

STEPHEN M. HORN: 1788
Assistant United States Attorney
Southern District of West Virginia
P.O. Box 1713
Charleston, WV 25326
Phone: 304-345-2200
Fax: 304-347-5443
Email: Steve.Horn@usdoj.gov

44

FOR THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY

8/25/11

**Date**

SHAWN M. GARVIN
Regional Administrator
U.S. Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA 19103

7/13/11

**Date**

MARCIA E. MULKEY
Regional Counsel
U.S. Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA 19103

7/7/11

**Date**

PHILIP YEANY
Senior Assistant Regional Counsel
U.S. Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA 19103

45

7 - 1 - 11
_____
Date

MARK POLLINS
Director, Water Enforcement Division
Office of Enforcement and
Compliance Assurance
United States Environmental
Protection Agency
Washington, D.C. 20460


6/28/11
_____
Date

CHAD CARBONE
Office of Enforcement and
Compliance Assurance
United States Environmental
Protection Agency
Washington, D.C. 20460

46

FOR THE PLAINTIFF THE STATE OF WEST
VIRGINIA:


2/7/11
Date

JENNIFER HUGHES
Senior Counsel
Office of Legal Services
West Virginia Department of Environmental
Protection
601 57th Street SE
Charleston, WV 25304
304-926-0460

47

FOR THE CITY OF WELCH AND WELCH
SANITARY BOARD

6 – 16 – 2011
Date

DANNY BARIE
Attorney at Law

6-16-2011
Date

REBA J. HONAKER
Mayor, City of Welch, and
Chairwoman, Welch Sanitary Board

48